FILED

2018 OCT 15 PM 4:03

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATT MORGAN,

Plaintiff,

CASE NO.: 6:18-cv-1746-ORL-40TBS

v.

CAPITAL ALLIANCE GROUP,

Defendant.

______________________________/

**COMPLAINT**

COMES NOW, Plaintiff, Matt Morgan, by and through the undersigned counsel, and sues Defendant, CAPITAL ALLIANCE GROUP (Hereinafter "CAG"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like CAG from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings

presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

**JURISDICTION AND VENUE**

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Orange County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2),

as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

**FACTUAL ALLEGATIONS**

8. Plaintiff is a natural person, and citizen of the State of Florida, residing in Orange County, Florida.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant, CAG, is a corporation which was formed in California with its principal place of business located at 1950 E.17th, 3rd Floor, Santa Ana, CA 92705 and which conducts business in the State of Florida.

11. CAG called Plaintiff approximately one hundred (100) times in an attempt to sell business lines of credit.

12. Upon information and belief, some or all of the calls CAG made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that his knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line and/or he received prerecorded messages from CAPITAL ALLIANCE GROUP.

13. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (407) ***-4647, and was the called party and recipient of Defendant's calls.

14. CAG placed an exorbitant amount of automated calls to Plaintiff's cellular telephone (407) ***-4647 in an attempt to sell Plaintiff business lines of credit.

15. Plaintiff does not currently have, nor has ever had, any account or business dealings with CAG.

16. Beginning on or about January 1, 2018 Plaintiff began receiving unsolicited and unrequested automated calls from CAG.

17. On or about the beginning of August, 2018, Plaintiff received a call from CAG and held on the line to reach a live agent. Once a live agent got on the call Plaintiff informed said agent to stop calling.

18. Despite lacking any express authority to call in the first place, and additionally being informed to cease calls, CAG continued to place automated calls to Plaintiff.

19. On or about August 1, 2018, CAG left Plaintiff the following voice message:

> Hey it's Rachel, I'm actually just following up on my last call regarding that $250,000.00 business line of credit I had preapproved for you. Umm it's the end of the 2nd quarter and really I'm just calling to find out if you have any growth plans for this summer. Umm give me a call, let's go over the rate and terms, uhh you can call me back at the number that popped up on your caller ID or you can reach me directly at 800-614-0397. Uhh really look forward to hearing from you, have a great day.

20. CAG has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

21. CAG has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or CAG, to remove the number.

22. CAG's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to CAG they do not wish to be called.

23. CAG has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

24. CAG has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

25. CAG has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

26. CAG has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

27. CAG's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from CAG's call list.

28. CAG has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

29. Not one of CAG's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

30. CAG willfully and/or knowingly violated the TCPA with respect to Plaintiff.

31. From each and every call placed without express consent by CAG to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

32. From each and every call without express consent placed by CAG to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from CAG's call.

33. From each and every call placed without express consent by CAG to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time she spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

34. Each and every call placed without express consent by CAG to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also

impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

35. Each and every call placed without express consent by CAG to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

36. Each and every call placed without express consent by CAG to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

37. Each and every call placed without express consent by CAG to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

38. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, and aggravation.

**COUNT I**
**(Violation of the TCPA)**

39. Plaintiff fully incorporates and realleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. CAG willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified CAG that Plaintiff wished for the calls to stop

41. CAG repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial

voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against CAG for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Dated this 12 day of October, 2018.

Respectfully submitted,

Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
TGomez@ForThePeople.com
Florida Bar #: 0338620
Attorney for Plaintiff