UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATT MORGAN,                                    Case No: 6:18-cv-01746-PGB-TBS

                        Plaintiff,              Hon. Judge Paul G. Byron

v.                                              Hon. Mag. Thomas B. Smith

CAPITAL ALLIANCE GROUP,

                        Defendant.

DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE

TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.    LEGAL STANDARD ..................................................................................... 6

    a.    Rule 11.................................................................................................. 6

    b.    28 USC § 1927 And The Court's Inherent Power To Sanction .......... 7

III.    SANCTIONS ARE NOT WARRANTED .................................................... 9

    a.    There Was No Bad Faith Or Conduct Akin to Contempt..................... 9

    b.    The Misrepresentation Was Not Material And The Court Was Not Misled ........ 12

    c.    The Transfer Motion Is Meritorious And Could Not Unreasonably Or Vexatiously Multiply Proceedings ..................................................... 14

        i.    *The Southern District of California Retains Exclusive Jurisdiction* ........ 16

        ii.    *Exclusive Jurisdiction Should Be Dispositive Under 1404(a)*.................. 21

IV.    CONCLUSION ............................................................................................ 23

TABLE OF AUTHORITIES

CASES

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
    457 F.3d 1180 (11th Cir. 2006)…………………………………….…5, 7, 8, 14

*Barnes v. Dalton*,
    158 F.3d 1212 (11th Cir. 1998)…………………………………………...……..8

*Barrios v. Regions Bank*,
    2013 U.S. Dist. LEXIS 132050 (M.D. Fla. August 21, 2013)………………….…15

*Berger v. Heckler*,
    771 F.2d 1556 (2d Cir. 1985)……………………………………………...…..20

*Bernal v. All Am. Inv. Realty, Inc.*,
    479 F. Supp. 2d 1291 (S.D. Fla. 2006)…………………………………...…..9

*Boys v. Mass Mut. Life Ins. Co.*,
    2013 U.S. Dist. LEXIS 103242 (E.D. Tenn. July 24, 2013)……………...…….14, 18

*Brown v. Neeb*,
    644 F.2d 551 (6th Cir. 1981)……………………………………………...………20

*Byrne v. Nezhat*,
    261 F.3d 1075 (11th Cir. 2001)………………………………………….……...7

*Calderon v. Merch. & S. Bank*,
    2013 U.S. Dist. LEXIS 154352 (M.D. Fla. Oct. 28, 2013)……………………………15

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)………………………………………………………...…...…..8

*Chevaldina v. Katz*,
    2018 U.S. Dist. LEXIS 28725 (S.D. Fla. Feb. 19, 2018)……………………………...19

*Cordoba v. Dillard's, Inc.*,
    419 F.3d 1169 (11th Cir. 2005)………………………………………...…....11

*Daniels v. Sodexo, Inc.*,
    2013 U.S. Dist. LEXIS 109484 (M.D. Fla. Aug. 5, 2013)…………………………..8, 15

*Danubis Grp., LLC v. Landmark Am. Ins. Co.*,
    2015 U.S. Dist. LEXIS 27186 (M.D. Fla. Jan. 27, 2015)…………………10, 13

*Davis v. Avvo, Inc.*,
    2011 U.S. Dist. LEXIS 103332 (M.D. Fla. Sep. 12, 2011)……………………………22

*E.g., Redmon v. Soc'y & Corp. of Lloyds*,
 434 F. Supp. 2d 1211 (M.D. Ala. 2006)……………………………..…………………..12

*Fitzgerald v. Regions Bank,*
 2014 U.S. Dist. LEXIS 4547 (M.D. Fla. Jan. 14, 2014)……………………………..15

*Gehl v. Direct Transp., Ltd.,*
 2013 U.S. Dist. LEXIS 14630 (M.D. Fla. Feb. 4, 2013)…………………………..7, 12

*Gelles v. Skrotsky*,
 15 F. Supp. 2d 1293 (M.D. Fla. 1998)……………………………………………………9

*Goulart v. United Airlines, Inc.,*
 1994 U.S. Dist. LEXIS 21856 (N.D. Cal. Sept. 28, 1994)………………………………20

*Hankins v. CarMax, Inc.,*
 2012 U.S. Dist. LEXIS 4612 (D. Md. Jan. 13, 2012)…………………………..4, 5, 18, 19

*Hodge v. Orlando Utils. Comm'n,*
 2010 U.S. Dist. LEXIS 12564 (M.D. Fla. Jan. 24, 2010)………………………3, 6, 10, 12

*Holmes v. Cont'l Can Co.,*
 706 F.2d 1144 (11th Cir. 1983)……………………………………………………………17

*Hudson v. Int'l Computer Negotiations, Inc.,*
 499 F.3d 1252 (11th Cir. 2007)……………………………………………………………7, 8

*In re Engle Cases*,
 283 F. Supp. 3d 1174 (M.D. Fla. 2017)………………………………………3, 10, 11

*In re Ricoh Corp.,*
 870 F.2d 570 (11th Cir. 1989)……………………………………………………………22

*Kaplan v. DaimlerChrysler,*
 *A.G.*, 331 F.3d 1251 (11th Cir. 2003)……………………………………………………...6

*Kokkonen v. Guardian Life Ins. Co. of America,*
 511 U.S. 375 (1994)………………………………………………………………………17

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.,*
 739 F.3d 848 (5th Cir. 2014)………………………………………………………………3

*Macort v. Prem, Inc.,*
 208 Fed. Appx. 781 (11th Cir. Nov. 30, 2006)……………………………………………7

*McDonald v. Emory Healthcare Eye Ctr.*,
 391 Fed. Appx. 851 (11th Cir. 2010)………………………………………………………1

*Medina v. 3c Constr. Corp.,*
 2006 U.S. Dist. LEXIS 102866 (S.D. Fla. Oct. 27, 2006)…………………………………9

*P&S Business Machines, Inc. v. Canon USA, Inc.*,
    331 F.3d 804 (11th Cir. 2003)……………………………………………………………22

*Peer v. Lewis*,
    606 F.3d 1306 (11th Cir. 2010)……………………………………………………..6, 15

*Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003)………………………………………………………………6

*Peterson v. BMI Refractories*,
    124 F.3d 1386 (11th Cir. 1997)…………………………………………………………8

*Rabbi Jacob Joseph School v. Province of Mendoza*,
    342 F. Supp. 2d 124 (E.D.N.Y. 2004)…………………………………………………22

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)………………………………………………………...23

*Riccard v. Prudential Ins. Co. of Am.*,
    307 F.3d 1277 (11th Cir. 2002)……………………………………………………...3, 10

*Roseberry-Andrews v. Schell & Kampeter, Inc.*,
    2016 U.S. Dist. LEXIS 58334 (D. Md. May 2, 2016)…………………………………18

*Rothenberg v. Sec. Mgmt Co.*,
    736 F.2d 1470 (11th Cir. 1984)…………………………………………………………9

*Schwartz v. Millon Air, Inc.*,
    341 F.3d 1220 (11th Cir. 2003)……………………………………………………...7, 15

*Sigurdsson v. Dicarlantonio*,
    2013 U.S. Dist. LEXIS 159623 (M.D. Fla. Nov. 7, 2013)…………………………4, 12, 14

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)…………………………………………………………………...21

*United States v. Am. Soc'y of Composers, Authors & Publrs.*,
    832 F. Supp. 82 (S.D.N.Y. 1993)……………………………………………………19

*United States v. Int'l Bhd. of Teamsters, etc.*,
    907 F.2d 277 (2d Cir. 1990)…………………………………………………………19

*Wachovia Bank v. Tien*,
    406 Fed. Appx. 378 (11th Cir. Dec. 22, 2010)………………………………………...8

*Yocum v. Nationstar Mortg., LLC*,
    2017 U.S. Dist. LEXIS 135860 (N.D. Ala. Aug. 24, 2017)………………………………13

STATUTES

28 USC § 1404(a)…………………………………………………………………4, 14, 21, 22

28 USC § 1406…………………………………………………………………………..21

28 USC § 1927………………………………………………………………………...passim

47 USC § 227…………………………………………………………………………..2

Fed. R. Civ. P. 11……………………………………………………………………passim

Fed. R. Civ. P. 12(b)(3)………………………………………………………………21

MISCELLANEOUS

2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 11.03 (3d ed. 2010)…………………...6

BLACK'S LAW DICTIONARY (8th ed. 2004)……………………………………………..7

Defendant Capital Alliance Group ("CAG" or "Defendant"), through the undersigned counsel of record, hereby respectfully responds to the Honorable Magistrate Judge Smith's Order to Show Cause ("OSC") as follows:

## I.   **INTRODUCTION**

William Restis, counsel for Defendant ("Counsel"), is responsible for making the incorrect factual representations in CAG's motion to transfer this action to the Southern District of California (Dkt No 22, the "Transfer Motion"). Declaration of William R. Restis in Response to Order to Show Cause ("Restis Decl."), ¶¶ 4, 9.  Local counsel Mr. Clay Parker did not participate in drafting the Transfer Motion, and relied upon Counsel's investigation. *Id.*, ¶ 12. In response to the OSC, Counsel has conducted additional research and agrees with the Honorable Magistrate Judge Smith that the paragraph identified in the OSC is not an accurate representation of the facts in *Bee, Denning, Inc. v. Capital Alliance Group*, 3:13-cv-2654-BAS-WVG (S.D. Cal.) ("*Bee*"). *Id.*, ¶¶ 13-14.

Counsel deeply regrets making any misstatements to the Court, and did not intend to mislead it. *Id.,* ¶ 16-17. Counsel "will make every effort to ensure that all future representations to this Court are factually accurate." *Id.*, ¶ 19.[1] Even though the paragraph cited in the OSC was not accurate, Counsel respectfully asserts that sanctions should not issue because:

---

[1] Counsel has a clean record, and has never been subject to discipline by any court or state bar. *Id.*, ¶ 2; *Cf. McDonald v. Emory Healthcare Eye Ctr.*, 391 Fed. Appx. 851, 853 (11th Cir. 2010) (sanctions depend on *inter alia* whether conduct "was part of a pattern of activity, or an isolated event," "whether it infected the entire pleading" and/or "whether the person has engaged in similar conduct in other litigation").

*First,* there was no intent to deceive and no evidence of conduct rising to the level of "bad faith" or "contempt." *See* § II and III.a, *infra.* Counsel did not represent Defendant in *Bee,* and had no involvement in that case. Restis Decl., ¶ 3. The Transfer Motion was based on a nearly identical motion to transfer an individual Telephone Consumer Protection Act (47 U.S.C. § 227, the "TCPA") lawsuit, *McKevitz v. Capital Alliance Group et al.*, No. 3:18-cv-00131-JRG-HBG pending in the Eastern District of Tennessee ("*McKevitz* Motion"). Restis Decl., ¶ 4.  Ex. A.

In preparing the *McKevitz* Motion in June 2018, Counsel relied on discussions with CAG's CEO and a "high-level review of the facts in *Bee*" primarily focused on the Honorable Judge Bashant's *Order Granting Motion for Final Approval of Class Action Settlement and Motion for Attorney Fees and Incentive Awards*, *Bee* docket No. 81 (the "Final Approval Order"). Restis Decl., ¶¶ 4-7.  Based on this inquiry, Counsel "believed the paragraph cited in this Court's OSC to be correct at the time [he] wrote it in the *McKevitz* Motion." *Id.*, ¶ 6.

Counsel's review of *Bee* was limited by the amount in controversy in *McKevitz,* and Defendant's "severely limited ability to absorb litigation expenses." *Id.*, ¶¶ 5. At the time Counsel prepared the *McKevitz* Motion, he "believed no findings were made by the Honorable Judge Bashant that would have established CAG's liability relevant to the facts of *McKevitz,*" and had not reviewed the documents cited in the Court's order denying the Transfer Motion. *Id.,* ¶ 7.

When Counsel was retained to defend the instant case, he "used the *McKevitz* Motion as a template, and modified it to the minimum extent necessary to address the facts of this case and Eleventh Circuit case law to minimize fees" because he "had been informed by [his] client that CAG is no longer operating as a going concern, that normal business operations have ceased, and the owners are in the process of winding down their business." *Id.*, ¶ 9-10. Counsel "should have

conducted a more diligent investigation into the facts in *Bee* before making the offending representation to the Court and to the Eastern District of Tennessee in *McKevitz*." *Id.*, ¶ 13. Moreover, Counsel "should not have let the paucity of [his] client's resources dictate [his] level of effort. [He] know[s] better than to make factual representations in court filings without adequate due diligence to confirm their accuracy. Had [he] conducted a more diligent review of the *Bee* docket, [he] would not have made the offending representation to the Eastern District of Tennessee in *McKevitz* or to this Court." *Id.*, ¶ 18.[2]

And while Counsel wholeheartedly agrees that he should have been more diligent, the *Bee* Docket has 81 entries, and it appears the only definitive evidence of falsity of the offending statement of fact is a single paragraph on page 16 of the *Bee* court's Preliminary Approval Order. *Bee* Dkt No. 28 at p. 4. *See* § III.a., *infra*, and Restis Decl., ¶¶ 15-16. Respectfully, this evidence falls far short of the "clear and convincing" evidence of bad faith or contempt necessary to issue *sua sponte* sanctions. *Hodge v. Orlando Utils. Comm'n*, 2010 U.S. Dist. LEXIS 12564, at *10 (M.D. Fla. Jan. 24, 2010) (when considering Rule 11 sanctions, "all doubts are resolved in favor of the signer."); *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1296 (11th Cir. 2002) ("A finding of civil contempt … must be supported by clear and convincing evidence.") (emphasis added); *In re Engle Cases*, 283 F. Supp. 3d 1174, 1225 (M.D. Fla. 2017) ("§ 1927 'require[s] clear and convincing evidence that sanctions are justified.'") citing *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th Cir. 2014) (emphasis added).

---

[2] In addition to responding to the OSC, Counsel has filed a correction to the *McKevitz* Motion, which is currently under submission in the Eastern District of Tennessee, to ensure that court is not similarly mislead in ruling on the issue of transfer. Restis Decl., ¶ 18, and Ex. B.

*Second*, although Counsel inaccurately represented the facts in *Bee*, the representations were made in an introductory statement unrelated to the merits of transfer pursuant to 28 U.S.C. § 1404(a). Restis Decl., ¶ 16. The Transfer Motion was based exclusively on the scope of the injunction issued in the *Bee* Final Approval Order. *See Id.*, ¶¶ 8 and 10. The Transfer Motion was not predicated on whether Plaintiff Morgan is a member of the settlement class in *Bee* or more importantly, whether the plaintiffs or the court in *Bee* had identified any wrongdoing by Defendant. Courts issuing sanctions for misstatements of fact usually do so when the fact is material. *See*, § III.b, *infra* citing *Sigurdsson v. Dicarlantonio*, 2013 U.S. Dist. LEXIS 159623, 1* 1-13 (M.D. Fla. Nov. 7, 2013) (M.J. Smith) (denying motion for sanctions because *inter alia* the fact "is not material to this litigation," and because "the Court has not been misled, [and] Defendant has suffered no prejudice.") Counsel has been unable to locate any case where sanctions were issued for misstating a tertiary fact that did not infect the court's analysis. Counsel respectfully requests that this not be the first. *Cf.* Restis Decl., ¶ 16 ("Had the factual findings and evidence in *Bee* been more central to the Transfer Motion, [Counsel] would have been more diligent in reviewing them.")

*Third*, the Transfer Motion was not "unreasonable" or "vexatious" and did not "multiply the proceedings." Unfortunately, Defendant's limited resources and the limited value of this case similarly limited Counsel's presentation of the Transfer Motion. As such, Counsel failed to present the Court with additional, persuasive authority holding that the "exclusive jurisdiction" in the *Bee* Final Approval Order should be dispositive in favor of transfer. *See e.g.* § III.C.i, *infra*, citing *inter alia Hankins v. CarMax, Inc.*, 2012 U.S. Dist. LEXIS 4612, * 12, 14-16 (D. Md. Jan. 13, 2012) ("Because CarMax agreed in the Consent Decree to comply with the Maryland regulations ***in the future*, there are intended third-party beneficiaries to the Consent Decree and the Settlement**

**Agreement**. Where Drake asserts claims of violation of the Consent Decree and requests relief, he is an intended third-party beneficiary. **Therefore, the Circuit Court for Baltimore County has exclusive authority over this case**.") (italics in original, bold added).

Because *Hankins* and numerous other cases cited below reveal that the Transfer Motion was meritorious, it cannot be "unreasonable" or "vexatious," as required to issue sanctions pursuant to 28 U.S.C. § 1927. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006) (the "term 'unreasonably' necessarily connotes that the district court must compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable." The term "vexatiously" means "without reasonable or probable cause or excuse; harassing; [or] annoying." These are satisfied "only when the attorney's conduct is so egregious that it is tantamount to bad faith.")

Counsel "take[s] very seriously [his] duties as an officer of the Court and did not intend to mislead it." Restis Decl., ¶ 17. Counsel sincerely apologizes for directing the Court's attention away from the primary arguments in the Transfer Motion, and wasting the Court's time in the process. Due to the seriousness of the Court's allegations, Counsel spent more than 40 hours researching and responding to the Court's OSC that will not be billed to Defendant. *Id.*, ¶ 22. Counsel respectfully submits that this significant expenditure of uncompensated time, and more importantly, the *permanent* record of Counsel's error now entombed in the OSC and this Court's record, is sufficient sanction for any misconduct and sufficient to deter similar errors in the future.

## II.   LEGAL STANDARD

### a.   Rule 11

Rule of Civil Procedure 11 states that "[b]y presenting to the court a ... written motion, ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the factual contentions have evidentiary support." The purpose of Rule 11 "is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) citing 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 11.03 (3d ed. 2010).

Proceedings under Rule 11 can be initiated either by motion of a party or *sua sponte* by the court. *Peer* at 1311. Court-initiated sanctions do not involve the "safe harbor" provision related to party initiated motions. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). That provision ordinarily gives a lawyer or litigant 21 days within which to correct or withdraw the challenged submission. *Id.* at 89.

Because "no 'safe harbor' opportunity exists to withdraw or correct a submission challenged in a court-initiated proceeding," there exists a higher standard "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255-56 (11th Cir. 2003); *see also Hodge v. Orlando Util. Comm'n*, 2010 U.S. Dist. LEXIS 12564, *10 (M.D. Fla. Jan. 25, 2010). Accordingly, *sua sponte* Rule 11 sanctions must be reviewed with "particular stringency." *Kaplan at* 1255 (citing cases).

The Eleventh Circuit has declined to resolve whether the "akin to contempt" standard requires a showing of subjective bad faith. *Kaplan*, 331 F.3d at 1256. Nonetheless, objective bad faith arises where an attorney "knowingly or recklessly pursue[s] a frivolous claim or needlessly

obstruct[s] the litigation of a non-frivolous claim." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1242 (11th Cir. 2006).  "Simple negligence or ignorance of the facts or law, without more, is not 'akin to contempt.'" *Gehl v. Direct Transport, Ltd.*, 2013 U.S. Dist. LEXIS 14630, * 4 (M.D. Fla. Feb. 4, 2013).

> **b.     28 USC § 1927 And The Court's Inherent Power To Sanction**

28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Eleventh Circuit has described § 1927 as "penal," and thus it is to be "strictly construed." *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. Nov. 30, 2006) (per curiam). "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). The allegedly improper conduct "must multiply the proceedings." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

The "term 'unreasonably' necessarily connotes that the district court must compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable." *Amlong*, 457 F.3d at 1190. The term "vexatiously" means "without reasonable or probable cause or excuse; harassing; [or] annoying." *Id.*, citing BLACK'S LAW DICTIONARY (8th ed. 2004). These are satisfied "only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007) (citation omitted); *Amlong*, 457 F.3d at 1193 (same).

Negligent conduct, standing alone, will not suffice as "something more than a lack of merit is required." *Id.*; *Amlong*, at 1193 ("an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney.") Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus." *Hudson,* 499 F.3d at 1262.

The second requirement, relating to multiple proceedings, is only satisfied when an attorney's conduct "results in proceedings which would not have been conducted otherwise." *Daniels v. Sodexo, Inc.*, 2013 U.S. Dist. LEXIS 109484, *12 (M.D. Fla. Aug. 5, 2013) citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)

Similarly, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted).  When considering sanctions under the court's inherent power, the threshold of bad faith conduct "is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Amlong*, 500 F.3d at 1252.

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court warned that "because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. The Eleventh Circuit recognizes that courts' inherent power to impose sanctions should be limited to bad-faith, vexatious, wanton, or oppressive conduct. *See Wachovia Bank v. Tien*, 406 Fed. Appx. 378, 382 (11th Cir. Dec. 22, 2010). The court's inquiry should focus primarily on the individual's

conduct and motive, rather than the validity of the case. *Rothenberg v. Sec. Mgmt Co.*, 736 F.2d 1470, 1472 (11th Cir. 1984).[3]

## III.   SANCTIONS ARE NOT WARRANTED

### a.   There Was No Bad Faith Or Conduct Akin to Contempt

Here, the contemporaneously filed Restis Declaration demonstrates that the attorney responsible for drafting the Transfer Motion "was not counsel of record" in *Bee* "and had no involvement in that case." Restis Decl., ¶ 3.  Thus, he had no direct knowledge of the facts in *Bee* that could support finding a subjective intent to deceive.  *Cf. Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1329-30 (S.D. Fla. 2006) (attorney exhibited "deliberate indifference to obvious facts" when he had multiple facts in his possession and exhibited a "complete disregard for the information known to him"); *also Medina v. 3c Constr. Corp.*, 2006 U.S. Dist. LEXIS 102866, at *5, 14-15 (S.D. Fla. Oct. 27, 2006) (sanctioning counsel under 28 U.S.C. § 1927 where counsel "fabricated [a] false interrogatory answer"); *Gelles v. Skrotsky*, 15 F. Supp. 2d 1293, 1296 (M.D. Fla. 1998) ("Sanctions are reserved for cases wherein a party has asserted facts and/or theories that were *known to him* to be false.") (emphasis in original).

Thus, bad faith or contempt-like conduct can only be found if Counsel actually reviewed those portions of the record in *Bee* that contradict his statements when preparing the Transfer Motion, or such facts were so readily apparent from the record in *Bee* that their falsity should have

---

[3] In determining whether to issue sanctions under Rule 11 or § 1927, courts in the Eleventh Circuit recognize a "tension inherent in the two scenarios underlying an attorney's representation of a client in a lawsuit: an attorney's zealous advocacy (on the one hand) and (on the other hand) efforts to pursue claims even if they are not adequately supported by the facts and law." *Collar v. Abalux, Inc.*, 2018 U.S. Dist. LEXIS 112086, at *27-28 (S.D. Fla. July 5, 2018) (citing cases). As such, **"[c]ourt[s] must resolve all doubts" in favor of not imposing sanctions**. *Id.,* at * 30 (emphasis added).

been obvious. *See Danubis Grp., LLC v. Landmark Am. Ins. Co.*, 2015 U.S. Dist. LEXIS 27186, at *49-50 (M.D. Fla. Jan. 27, 2015) (finding "deliberate indifference to obvious facts" where the plaintiff's complaint completely fabricated the existence of a lease that was the foundation of his claim and "the record showed that counsel did not perform even the most perfunctory of investigations prior to filing his complaint.") (M.J. Smith). Respectfully, the record before the Court supports neither inference, and certainly not by "clear and convincing evidence." *In re Engle Cases*, 283 F. Supp. 3d at 1225; *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d at 1296.

This is because counsel's primary review of *Bee* was limited to that court's Final Approval Order and discussions with his client regarding what happened in that case. Restis Decl., ¶ 6. Counsel stated:

> While I may have reviewed other docket items from *Bee* in addition to the Final Approval Order, I am confident that at the time I prepared the *McKevitz* Motion, I believed no findings of fact were made by the Honorable Judge Bashant that would have established CAG's liability relevant to the facts of *McKevitz*. Specifically, at the time I prepared the *McKevitz* Motion, I had not reviewed Judge Bashant's preliminary approval order (*Bee* Dkt No. 74 at pp. 16-17) cited in the OSC (the "Preliminary Approval Order"), the *Bee* Settlement Agreement (*Bee* Dkt No 71-1) or the *Bee* motion for preliminary approval (*Bee* Dkt No. 71-3) cited in the Court's Order denying [the Transfer Motion]. [¶]
>
> I likely did not review these documents because I believed (and continue to believe) that the Final Approval Order is the only portion of *Bee* relevant to the analysis under 28 U.S.C. § 1404(a).

*Id.*, ¶¶ 7-8.  In addition, Mr. Restis' review of *Bee* was limited by his client's resources, and the amount in controversy in *McKevitz. Id.*, ¶ 5.

*Hodge v. Orlando Utils. Comm'n*, 2010 U.S. Dist. LEXIS 12564, (M.D. Fla. Jan. 24, 2010) is instructive. In *Hodge,* the Court declined to issue *sua sponte* Rule 11 sanctions even though the offending attorney was *actually* in position of evidence that contradicted his client's claims. The

court determined that even though the attorney should have reviewed the documents, there was no

"evidence to discredit [the attorney's] assertions that he did not see the [evidence.]" *Id.* at *17-19. As

such, the Court [could ]not conclude that [the attorney's] actions were akin to contempt or taken in

subjective bad faith." *Id.*, at * 19.

Nor is the factual error as readily apparent as the Honorable Magistrate Judge Smith's Order

denying transfer appears to indicate. As Counsel respectfully stated in response to the OSC:

> even after reviewing the *Bee* Settlement Agreement (*Bee* Dkt No 71-1) and the *Bee*
> motion for preliminary approval (*Bee* Dkt No. 71-3) cited in the Court's Order denying
> the Transfer Motion, I do not believe these documents warrant an inference that I
> intended to mislead the Court or consciously disregarded known facts. Respectfully,
> the fact that the *Bee* Defendants had insufficient assets to fund a class action settlement
> is not probative of whether the *Bee* plaintiffs were able to prove their case. [¶]
>
> The only factual finding relating to the issues in *McKevitz* and the instant matter that I
> have identified appears to be the lone paragraph in the Preliminary Approval Order
> cited by the Honorable Judge Smith. Dkt No. 28 at p. 4.

Restis Decl., ¶¶ 15-16.

The *Bee* Docket has 81 entries, and it appears the only definitive evidence of falsity of the

offending statement of fact is a single paragraph on page 16 of the *Bee* court's Preliminary Approval

Order. Dkt No. 28 at p. 4. Because this paragraph was buried in a lengthy court order that Counsel

had little cause to read, respectfully, it cannot support a "clear and convincing" finding of bad faith

by Defendant's counsel. *Cf. Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 (11th Cir. 2005) (in

disability case, bad faith found where plaintiff had "reckless disregard" of a "serious defect" in her

case, the lack of any disability)*; In re Engle Cases*, 283 F. Supp. 3d 1174, 1211-15 (M.D. Fla. 2017)

(ordering *sua sponte* Rule 11 and § 1927 sanctions where counsel maintained obviously "fatally

defective complaints" of dead clients for four years while "repeatedly resisted proposals that

someone inquire into the status of the plaintiffs, and insisted that they were in contact with their clients and that they would be willing to certify that the complaints satisfied Rule 11"); *Gehl v. Direct Transp., Ltd.*, 2013 U.S. Dist. LEXIS 14630, at \*9 (M.D. Fla. Feb. 4, 2013) ("Plaintiff's Motion to remand was frivolous, and her response to the Show Cause Order was lacking in candor. However, there is no evidence of bad faith or intentional misrepresentation sufficient to warrant the imposition of sanctions *sua sponte.*")

Since "all doubts are resolved in favor of the signer," the Order to Show Cause should be, respectfully, discharged. *Hodge*, 2010 U.S. Dist. LEXIS 12564, at \*10.

### b. The Misrepresentation Was Not Material And The Court Was Not Misled

A further basis to discharge the Order to Show Cause is that the incorrect statement of the record in *Bee* was irrelevant to the Court's disposition of the Transfer Motion. The entire basis of Defendant's Transfer Motion depends on the scope of the injunction issued by the Southern District of California in *Bee*, and not the factual findings or evidence in that case.

In *Sigurdsson*, 2013 U.S. Dist. LEXIS 159623, the Honorable Magistrate Judge Smith denied a motion for sanctions because *inter alia* the fact "is not material to this litigation." *Id.* at \*11-13. As such, "the Court has not been misled, [and] Defendant has suffered no prejudice." *Id.*

Other courts have similarly found a "materiality" requirement to imposing sanctions for a false statement of fact. *E.g., Redmon v. Soc'y & Corp. of Lloyds*, 434 F. Supp. 2d 1211, 1226 (M.D. Ala. 2006) ("none of the alleged fraudulent misrepresentations are remotely connected to the gateway issues of arbitration or jurisdiction. Assuredly, even if the allegations were patently false, the Court would not be relying upon them for any purpose related to the gateway issues. In short, Redmon's motion for Rule 11 sanctions is clearly not well-taken, and is due to be denied.")

Here, Defendant's counsel states that:

> I likely did not review these documents [from the *Bee* docket] because I believed (and continue to believe) that the Final Approval Order is the only portion of *Bee* relevant to the analysis under 28 U.S.C. § 1404(a).
>
> When I was retained to defend the instant case, I concluded that transfer is appropriate for the same general reasons articulated in the *McKevitz* Motion. At the time I drafted the Transfer Motion*,* I had been informed by my client that CAG is no longer operating as a going concern, that normal business operations have ceased, and the owners are in the process of winding down their business. Accordingly, I used the *McKevitz* Motion as a template, and modified it to the minimum extent necessary to address the facts of this case and Eleventh Circuit case law to minimize fees.
>
> I did not further revisit the *Bee* docket, or do additional research into the issues because, respectfully, I believed (and continue to believe) that the following citation is dispositive of the Court's analysis under 28 U.S.C. § 1404(a): *Boys v. Mass Mut. Life Ins. Co.*, 2013 U.S. Dist. LEXIS 103242, at *10-11 (E.D. Tenn. July 24, 2013) ("a district court that enters a consent decree and retains enforcement jurisdiction in all probability has exclusive jurisdiction over claims relating to it.")

Restis Decl., ¶¶ 8-9. As such, the regrettably false statement "was an introductory statement irrelevant to whether CAG's Transfer Motion was meritorious. Had the factual findings and evidence in *Bee* been more central to the Transfer Motion, [he] would have been more diligent in reviewing them." *Id.,* ¶ 16.

Conversely, false statements of fact that were found to be sanctionable generally relate to material issues in the litigation. *See Danubis Grp., LLC*, 2015 U.S. Dist. LEXIS 27186, at *49-50 (false statement related to the central issue the litigation); *Yocum v. Nationstar Mortg., LLC*, 2017 U.S. Dist. LEXIS 135860, at *21 (N.D. Ala. Aug. 24, 2017) ("Because Plaintiff's false statements go directly to the ownership of the Property and his identity as the proper party in interest, there is no doubt his conduct relates to a pivotal issue in the case, and sanction is warranted. Indeed, the need for sanction is heightened where the conduct relates to a pivotal issue in the case.") Counsel has been

unable to locate any case where sanctions were issued for misstating a tertiary fact that did not infect the court's analysis.

Respectfully, this Court should discharge the Order to Show Cause pursuant to its previous ruling in *Sigurdsson* because the false statement was not material and did not mislead the Honorable Magistrate Judge Smith.

### c.   The Transfer Motion Is Meritorious And Could Not Unreasonably Or Vexatiously Multiply Proceedings

Defendant and its counsel strenuously maintain that the injunction issued by the Honorable Judge Bashant in *Bee* was sufficient to warrant transfer under 28 U.S.C. § 1404(a). Restis Decl., ¶ 10 ("I believed (and continue to believe) that the following citation is dispositive of the Court's analysis under 28 U.S.C. § 1404(a): *Boys v. Mass Mut. Life Ins. Co.*, 2013 U.S. Dist. LEXIS 103242, at *10-11 (E.D. Tenn. July 24, 2013) ('a district court that enters a consent decree and retains enforcement jurisdiction in all probability has exclusive jurisdiction over claims relating to it.')") Since Defendant filed the Transfer Motion, additional research has been conducted on this issue, which confirms that the motion should have been, respectfully, granted. Restis Decl., ¶¶ 20-21.[4]

As stated below, the Transfer Motion is well grounded in fact and law. This precludes a finding that the Motion was filed "unreasonably" or "vexatiously." *Amlong*, 457 F.3d at 1190 (defining these terms). And since it is a single procedural motion filed at the outset of the case, it did

---

[4] *"The statement in the Transfer Motion that *Boys* was a 'near identical case' (Dkt No. 22 at p. 5) was left over from the *McKevitz* Motion. *Cf.* Ex. A. at p 2. *Boys* was issued by the Chief Judge of the court in which *McKevitz* is pending, Mr. McKevitz' own complaint expressly alleged he received calls during the class period certified and settled in the *Bee* Final Approval Order, and Mr. McKevitz expressly relied upon the *Bee* injunction as a predicate for his claims." Restis Decl., ¶ 11.

not "multiply the proceedings." *Schwartz*, 341 F.3d at 1225; *Daniels,* 2013 U.S. Dist. LEXIS 109484, *12 (Section 1927 sanctions not appropriate unless it "results in proceedings which would not have been conducted otherwise.")

Cases where courts have issued sanctions pursuant to Section 1927 are factually very different from the Motion to Transfer.  For example, in *Fitzgerald v. Regions Bank*, the Court imposed sanctions under Rule 11 and Section 1927 because the plaintiff filed an amended complaint that reiterated the same legal theories that were rejected by the court in a previous litigation involving the same parties. 2014 U.S. Dist. LEXIS 4547, at *14 (M.D. Fla. Jan. 14, 2014) ("Remarkably, Plaintiffs continue to reiterate the same legal theories that have already been rejected in this case and similar actions in their objections to the sanctions motion."); *see also, Barrios v. Regions Bank*, 2013 U.S. Dist. LEXIS 132050, *17-18 (M.D. Fla. August 21, 2013) ("Plaintiff and [Plaintiff's counsel] were repeatedly advised—both by Defendant and the Court—that Plaintiff's claims were frivolous. Nonetheless, Plaintiff proceeded with this action and Defendant was forced to defend against this frivolous claim."); *Calderon v. Merch. & S. Bank*, 2013 U.S. Dist. LEXIS 154352, at *17 (M.D. Fla. Oct. 28, 2013) ("[Plaintiff's counsel] continued to pursue Plaintiffs' claims even after . . . . this Court found Plaintiffs lacked standing, and after this Court rejected Plaintiffs' legal theory in the other related cases.")[5]

---

[5] In addition, the Transfer Motion has not resulted in a delay of these proceedings. Defendant has answered Plaintiff's Complaint (*Dkt* No. 13), and has been participating in discovery while the Transfer Motion was under submission. *Cf. Peer*, 606 F.3d at 1314 (even though attorney knew that claim was frivolous, "sanctions are not appropriate under section 1927 because Rosenbaum did not delay the judicial proceedings").

*i.   The Southern District of California Retains Exclusive Jurisdiction*

Although Plaintiff Morgan's opposition to the Transfer Motion (Dkt No. 25), and the Honorable Magistrate Judge Smith's Order thereon (Dkt No 28) focus on the fact that Plaintiff Morgan was not a member of the settlement class in *Bee*, this was never argued by CAG as a basis for transfer.

Neither Plaintiff Morgan's opposition to the Transfer Motion, nor the Honorable Magistrate Judge Smith's Order thereon address whether Plaintiff Morgan's Complaint alleges conduct that would require the Southern District of California to determine if CAG has complied with the stipulated injunction in the *Bee* Final Approval Order. As stated on page 2 of the Transfer Motion, Plaintiff Morgan's Complaint clearly implicates the Final Approval Order's injunction:

> As part of the *Bee* Settlement, Capital Alliance was "ORDERED … to comply with [certain] injunctive relief, as described in the Settlement Agreement." Declaration of William R. Restis ISO Plaintiff's Motion to Transfer, "Restis Decl.", Ex. A, at p. 4 ¶ H. Judge Bashant's injunction required Capital Alliance to *inter alia*: "establish written procedures for TCPA compliance"; "maintain a list of telephone numbers of persons who request not to be contacted"; "scrub for cellular telephones before making autodialed calls or calls made with an artificial voice or use or prerecorded messages"; and "not call cellular telephones prior to receipt of the express written permission of the intended recipient[.]" *Id.*
>
> Plaintiff's Complaint alleges Capital Alliance is in violation of this injunction by making "approximately one hundred" calls "to Plaintiff's *cellular telephone number* … using an 'automatic telephone dialing system' … or an artificial or prerecorded voice[.]" Complaint, Dkt No 1, ¶¶ 11-12. (emphasis added). Plaintiff also alleges that Capital Alliance "has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, … *with no way for the consumer, or CAG, to remove the number.*" *Id.*, ¶ 21 (emphasis added). Plaintiff alleges Defendant's "corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to CAG they do not wish to be called." *Id.*, ¶ 22. And that Defendant's "corporate policy provided no means for Plaintiff to have Plaintiff's number removed from CAG's call list." *Id.*, ¶ 27. As a result, Plaintiff alleges that Defendant "willfully and/or knowingly violated the TCPA." *Id.*, ¶ 30.

Dkt No 22, at p. 2.[6]

Because Plaintiff Morgan's Complaint clearly alleges violations of the injunction contained in the *Bee* Final Approval Order, Plaintiff's Complaint is within the continuing jurisdiction clause thereof, which provides that:

> [the Southern District of California] reserves <u>exclusive and continuing jurisdiction and venue</u> with respect to the consummation, implementation, <u>enforcement</u>, <u>construction</u>, <u>interpretation</u>, <u>performance</u> and administration of the Settlement Agreement.

Restis Decl. ISO Transfer Motion, Dkt No 22-1, Ex. A at p. 4 (emphasis in original).

The Supreme Court has recognized that it is within a court's purview to retain jurisdiction over the enforcement of a settlement agreement where it "had been made part of the order of dismissal - either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381 (1994). A stipulated injunction in a class action settlement is the equivalent of a consent decree. *See Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1146-47 (11th Cir. 1983) ("the court certified the case as a class action, approved the consent decree, and overruled the objections to the settlement allocation.")

As noted by Chief Judge Varlan of the Eastern District of Tennessee "generally speaking a district court that enters a consent decree and retains enforcement jurisdiction in all probability has

---

[6] Respectfully, it is irrelevant that under the Final Approval Order "absent Class members retain their rights to bring lawsuits for damages against Defendants for violations of the TCPA." Order Denying Transfer Motion, Dkt No. 28 at 6. As this Court correctly determined, "the California court approved the settlement in <u>Bee</u> before Plaintiff began receiving telephone calls from Defendant. So, Defendant cannot plausibly argue that Plaintiff is a member of the classes whose rights were determined in <u>Bee</u>." *Id.* In other words, the "retention of … rights" clause in the Final Approval Order does not apply to Plaintiff Morgan's claims, because he was not a member of that class.

exclusive jurisdiction over claims relating to it." *Boys v. Mass Mut. Life Ins. Co.*, 2013 U.S. Dist. LEXIS 103242, at *10-11 (E.D. Tenn. July 24, 2013); *Roseberry-Andrews v. Schell & Kampeter, Inc.*, 2016 U.S. Dist. LEXIS 58334, at *8 (D. Md. May 2, 2016) ("It would be inconsistent for the Settlement Court to retain jurisdiction for the purpose of 'construing, enforcing, and administering the Settlement Agreement,' [Citation] 'but permit another court to construe what it meant in that judgment.'")

*Hankins v. CarMax, Inc.*, 2012 U.S. Dist. LEXIS 4612 (D. Md. Jan. 13, 2012) is on point. In *Hankins*, the court considered the effect of a consent decree issued in a class action settlement where the decree explicitly "retained exclusive jurisdiction over the [earlier] Settlement Agreement and Consent Decree." *Id.*, at 11-12. Like the *Bee* Final Approval Order, "the [*Hankins*] Final Order incorporating and approving the Settlement Agreement contains a provision where the Circuit Court for Baltimore retains jurisdiction over "*all matters* relating to the *interpretation, administration, implementation, effectuation*, and *enforcement* of the Settlement Agreement." *Id.*, at * 14-15 (emphasis in original). The District of Maryland cited to Fourth Circuit cases which held that where "parties agree to a specific jurisdiction without including modifying terms allowing for different forums, that forum is held to be <u>mandatory, therefore exclusive</u>". *Id.*, at *13 (emphasis added).

Most importantly, the court <u>rejected</u> the contention that the issuing court "did not retain exclusive jurisdiction over subsequently filed actions." *Hankins.*, at * 12. The defendant had argued that "even if the Circuit Court for Baltimore County has jurisdiction over all matters involving the *Hankins* Settlement, the Drake Complaint represents a new action with new claims not covered under that Settlement." *Id.*, at * 15. In noting that the new action and the original settlement addressed the same underlying conduct, the District of Maryland noted that

> Because CarMax agreed in the Consent Decree to comply with the Maryland regulations **in the future**, **there are intended third-party beneficiaries to the Consent Decree and the Settlement Agreement**. Where Drake asserts claims of violation of the Consent Decree and requests relief, he is an intended third-party beneficiary. **Therefore, the Circuit Court for Baltimore County has exclusive authority over this case**.

*Id.*, at * 16 (italics in original, bold added).

The same is true in this case. Plaintiff Morgan is a third party beneficiary of the *Bee* injunction. As such, the Southern District of California "has exclusive authority over this case." *Id.*, at * 16. *See also Chevaldina v. Katz*, 2018 U.S. Dist. LEXIS 28725, at *14 (S.D. Fla. Feb. 19, 2018) (citing *Hankins* and noting that where a "state court has retained jurisdiction to enforce the terms of a settlement agreement and resolve disputes relating to that agreement, then a district court should dismiss an action arising out of the agreement in favor of the state court adjudicating the dispute."); *United States v. Am. Soc'y of Composers, Authors & Publrs.*, 832 F. Supp. 82, 86 (S.D.N.Y. 1993) ("The need to retain the Court's jurisdiction over such matters arises from the imperative of avoiding the risk of subjecting the Consent Decree to inconsistent interpretations that would tend to interfere with or frustrate this Court's jurisdiction over the Decree.")

To conclude otherwise creates the real possibility that Defendant CAG will be held to inconsistent standards of conduct. For example, in *United States v. International Brotherhood of Teamsters*, the Second Circuit held that a district court was within its powers under the All Writs Act to enjoin other courts from proceeding to adjudicate claims that implicated consent decrees issued by the district court. *United States v. Int'l Bhd. of Teamsters, etc.*, 907 F.2d 277, 280 (2d Cir. 1990). The Second Circuit upheld the district court's findings that collateral litigation "created a

'significant risk of subjecting the Consent Decree to inconsistent interpretations and … inconsistent judgments.'" *Id.,* at 280-281 (citing cases).

In this case, if CAG is compliant with the Final Approval Order's injunction concerning TCPA procedures, how can it be held to violate the TCPA? If CAG has complied with the injunctive components of the Final Approval Order, this should provide a complete defense to Plaintiff Morgan's TCPA claim. *See* CAG's Answer, Dkt No. 13, at First Defense (lack of subject matter jurisdiction); *id.,* at Fifth Defense ("Defendant acted in good faith and specifically denies it engaged in a willful or knowing violation of the TCPA toward Plaintiff."); *id.* at Sixth Defense ("Any violation of the TCPA was unintentional and resulted from a bona fide error notwithstanding the reasonable practices and procedures established and implemented by Defendant to effectively prevent communications in violation of the TCPA."); *cf. Bee* Final Approval Order, pp. 4-5 at ¶¶ 1-5 (ordering CAG to comply with certain policies and procedures).

This was not mere procedural posturing, but issues going to the very heart of the claims and defenses in this case. In light of the continuing jurisdiction clause in the Final Approval Order, how could this Court rule on the propriety of such defenses? As CAG stated in its motion to transfer "the best, and indeed only Court that can rule on [these issues] is in the Southern District of California." Dkt No. 22 at p. 4; *see also Berger v. Heckler,* 771 F.2d 1556, 1576 n.32 (2d Cir. 1985) ("'few persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it'") quoting *Brown v. Neeb,* 644 F.2d 551, 558 n.12 (6th Cir. 1981).

In *Goulart v. United Airlines, Inc.,* 1994 U.S. Dist. LEXIS 21856 (N.D. Cal. Sept. 28, 1994), the plaintiffs alleged that "defendants fraudulently induced them to give up their union jobs and accept promotions to management positions, causing them to unwittingly lose their seniority in the

union." *Id.*, at * 2. The plaintiffs alleged that the defendant misrepresented the terms of a consent decree that was issued many years earlier in the Northern District of Illinois. *Id.*, at * 3 and 10. In response to the plaintiffs' complaint, the defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406. In the alternative, the defendants sought transfer pursuant to 28 U.S.C. § 1404(a). *Id.*, at * 8.

The court found that although *it had proper venue,* "[i]t is clear that Judge Will retains ultimate jurisdiction for enforcing, modifying, or clarifying, the full purpose and intent of the Consent Decree. Thus, if this case requires any such interpretation or interference with the Consent Decree, the case should be transferred to Judge Will." *Id.*, at * 8-9. The court found that "the allegations essentially involve common law claims which could probably be adjudicated without requiring interpretation of the Consent Decree." *Id.,* ¶ 10. "Nonetheless, the court [found] that the <u>relief</u> requested by plaintiffs is inextricably intermingled with the provisions of the Consent Decree and thus venue is not proper in this court." *Id.* (emphasis in original). This was because "Plaintiffs' request for relief [could not] be separated from the relief provided in the Consent Decree." *Id.*, at * 11. As such, the case was dismissed for improper venue.

The same is true in this case. The allegations in Plaintiff's complaint are "inextricably intermingled with the provisions of the [*Bee* Final Approval Order.]" *Id.*, at 10-11. As such, the Transfer Motion was meritorious.

### ii.   <u>*Exclusive Jurisdiction Should Be Dispositive Under 1404(a)*</u>

According to the Supreme Court, where a particular forum is held to have "exclusive jurisdiction" over a case, this is a "significant factor that figures centrally in the district court's calculus" under 28 U.S.C. § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988); *id.,*

at 34 ("a valid forum selection clause [should be] given controlling weight in all but the most exceptional circumstances.") (Kennedy J. concurring); *cf. In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989) (finding that the venue mandated by a forum-selection clause rarely will be outweighed by other 1404(a) factors).

In *Davis v. Avvo, Inc.*, 2011 U.S. Dist. LEXIS 103332 (M.D. Fla. Sep. 12, 2011), this Court held that "Under Section 1404(a), the court should consider the convenience of parties and witnesses and the interest of justice, with a choice of forum clause a significant factor that figures centrally in the district court's calculus." *Id.*, at \*4 citing *P&S Business Machines, Inc. v. Canon USA, Inc.,* 331 F.3d 804, 807 (11th Cir. 2003) (emphasis added). "Thus, while other factors might conceivably militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.'" *Id.,* (emphasis added).

While a forum selection clause is not the same as a court order, courts have treated them under the same standard. As the Middle District of Tennessee noted in *Boys,*

> Whether plaintiff is or is not a class member and whether his claims are or are not barred by the Varacallo Final Order are precisely the issues that will determine whether his claims may proceed to litigation on the merits. Such threshold determinations fall squarely within the purview of the Varacallo court's continuing jurisdiction. That continuing jurisdiction, when considered together with the judicial interest in ensuring efficient and economical pretrial proceedings and in avoiding inconsistent rulings, compels the Court to grant the transfer.

2013 U.S. Dist. LEXIS 103242, at \*12 (citing cases).

As such, Courts often find the existence of a related action to be "determinative" under the 28 U.S.C. § 1404(a) analysis. *See Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004) ("courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be

determinative.") (citing cases); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.")

Respectfully, the above authority persuasively demonstrates that the Transfer Motion was meritorious. At the very least, it demonstrates that Defendant had a good faith basis to bring the Transfer Motion. Respectfully, the Transfer Motion cannot be considered unreasonable or vexatious.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Counsel respectfully requests that the Court discharge the OSC without further sanction.

Dated January 4, 2019

Respectfully submitted,

THE RESTIS LAW FIRM, P.C.

/s/ William R. Restis
William R. Restis (CA 246823)
*Admitted pro hac vice*
The Restis Law Firm, P.C.
402 West Broadway, Suite 1520
San Diego, CA 92101
Tel: 619.270.8383
E-mail: william@restislaw.com

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed on this 4th day of January 2019 via the Court's CM/ECF system which sent electronic notice of such to all parties of record.

/s/ William R. Restis
William R. Restis (CA 246823)
*Admitted pro hac vice*